ORIGINAL

IN THE UNITED STATES DISTRICT COURT F I L E D
DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

OCT 03 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

DERRICK LUCKEY, Executor of
the Estate of Danyelle A. Luckey,
and
DERRICK LUCKEY and
ANNETTE LUCKEY, parents of
Danyelle A. Luckey, deceased

    Plaintiffs,

    v.

UNITED STATES DEPARTMENT
OF THE NAVY and
UNITED STATES OF AMERICA,
jointly and severally,

    Defendants.
_____

**CV  18  6071  JSC**

CIVIL ACTION

FILE NUMBER _____

**SERVE:**

United States Attorney General

U.S. Department of Justice

950 Pennsylvania Avenue NW

Washington, D.C. 20530-1000


Secretary of the Navy

1000 Navy Pentagon Room No. 48686

Washington, D.C. 20350-1000

## VERIFIED COMPLAINT

    COME NOW, DERRICK LUCKEY, executor of the estate of Danyelle A.

Luckey, and DERRICK LUCKEY  and ANNETTE LUCKEY,  parents of

Danyelle A. Luckey, deceased, plaintiffs in the above-styled action ("Plaintiffs"),

and set forth this their Complaint against the UNITED STATES OF AMERICA,

*Luckey v. United States -Verified Complaint*

*Aff. of Rima Laibow, M.D.  (Ex. A)*                                             1

and the UNITED STATES DEPARTMENT OF THE NAVY, jointly and severally (hereinafter, collectively referred to as "Defendants").

## I.    **Summary of Case.**

1.    The Plaintiffs in this case are not alleging that defective or incompetent medical care by the medical staff of the *USS Ronald Reagan* of the Decedent and the Decedent's serious medical condition proximately caused the Decedent's death of untreated sepsis on October 10, 2016; instead, because the medical records produced by the Navy allegedly covering the Decedent's last days are so sparse, so minimal and lacking in setting forth the suggestion of even the most basic medical care and treatment of the Decedent during the Decedent's last days, the Plaintiffs are alleging that <u>the failure of the medical staff of the *USS Ronald Reagan* to treat the Defendant was the proximate cause of the Decedent's death by untreated sepsis on October 10, 2016.</u>

2.    Doctors and other medical professionals, including medical doctors employed by the United States Navy, are highly trained and go through years of study and practice in order to be able to treat patients. Seamen, including the deceased plaintiff in this case, 23 year old Danyelle Luckey (hereinafter, "Decedent"), who was two weeks into her first duty assignment at sea as an Assistant Personnel Clerk aboard the *U.S.S. Ronald Reagan,* trust and rely upon the ship's medical staff's training and expertise to be willing and able to diagnose what was wrong with the Decedent on October 4, 2016 and offer appropriate treatment for her illness.

3.    As set forth herein, however, instead of carefully examining and

*Luckey v. United States -Verified Complaint*

*Aff. of Rima Laibow, M.D.  (Ex. A)*

treating the Decedent's high temperature and other symptoms, the medical staff of the *U.S.S. Ronald Reagan* failed to treat the Decedent and the Decedent's medical condition in any serious or meaningful way, until the time of or moments before the Decedent's death of untreated sepsis on October 10, 2016.

4.     The medical staff of the *U.S.S. Ronald Reagan* failed to treat the Decedent and the Decedent's serious medical condition in October, 2016 by, *inter alia*, the following:

(1)     Failure to assess and monitor the Decedent's condition;

(2)     Failure to keep and maintain accurate and adequate medical records for the Decedent during October, 2016;

(3)     Failure to perform required medical tests (or any medical tests at all) on the Decedent while the Decedent was still alive and breathing;

(4)     Failure to refer the Decedent to a specialist when necessary to save the Decedent's life;

(5)     Failure to med-evacuate the Decedent from the *U.S.S. Ronald Reagan* when the Decedent's condition became critical;

(6)     Failure to treat the Decedent's a medical condition in a timely manner;

(7)     Failure to treat the Decedent's medical condition at all;

(8)     Failure to let the Decedent know  about the available treatments for her condition aboard ship while the Decedent was still conscious;

(9)     Failure to let the Decedent know about treatment options for her condition at a hospital ashore while the Decedent was still conscious;

(10)    Failure to adhere to accepted standards of care for the treatment of the Decedent's condition;

(11) Failure to communicate clearly the important facts about the Decedent's medical condition to the Decedent while the Decedent was still conscious;

(12) Failure to treat the Decedent's serious medical condition that was treatable if caught early; and

(13) Failure to treat the Decedent's serious medical condition early enough to have prevented the extreme pain, confusion, mental distress, and agony unnecessarily suffered by the Decedent which was the direct and proximate result of the failure to the medical staff to treat the Decedent's medical condition in a timely manner or at all.

## II.   **Overview of Claims**.

5.      Plaintiffs herein seek:

(1), recovery of the damages, including for the unnecessary and exacerbated pre-death pain, suffering, and mental anguish suffered by Danyelle A. Luckey (hereinafter referred to as "Decedent") arising out of the failure to treat the Decedent and her serious medical condition and/or medical malpractice committed by Defendants' agents, employees, and contractors with respect to Decedent, during the period of October 4, 2016, up to the moment of the Decedent's death on October 10, 2016 (Count I);

(2), recovery of damages in the form of the full value of the life of the Decedent for the wrongful death of Decedent caused by the failure to Defendants' agents, employees, and contractors under California law to treat the Decedent and the Decedent's serious medical condition in October, 2016, up to and including the tile of the Decedent's death on October 10, 2016 of untreated sepsis (*e.g.,* California Code of Civil Procedure §§ 377.60, 377.61 *et seq.*)(Count II);

*Luckey v. United States -Verified Complaint*
*Aff. of Rima Laibow, M.D. (Ex. A)*                                    4

(3),  recovery by Decedent's Estate of, <u>inter</u> <u>alia</u>, the full value of the life of the Decedent  as well as Decedent's funeral expenses from Defendants for the wrongful death of the Decedent caused by the failure to Defendants' agents, employees, and contractors under California law to treat the Decedent and the Decedent's serious medical condition in October, 2016, up to and including the time of the Decedent's death on October 10, 2016 of untreated sepsis (<u>Count III</u>); and

(4)   recovery by the mother and father of the Decedent for the pain and suffering and emotional distress they endured during the period of October 6, 2016, when, due to Decedent's catastrophically deteriorating medical condition, the Decedent was no longer able to send text messages to her parents regarding her medical condition and non-treatment by the medical staff of the *Ronald Reagan,* up to and including the moment of the Decedent's death, which death was proximately caused by the failure to Defendants' agents,  employees, and contractors under California law to treat the Decedent and the Decedent's serious medical condition in October, 2016, up to and including the October 10, 2016 of untreated sepsis proximately caused by the failure of the Defendant's agents, employees, and contractors, including but not limited to the medical abandonment/failure to treat  the Decedent by such medical staff, who owed a duty of care towards the Decedent and who also owed a separate duty of care to Decedent's parents.

### III.   <u>Introduction</u>.

6.      Danyelle A. Luckey ("Decedent") was a healthy, vibrant, and vivacious 23 year old woman who began her career with the U.S. Navy as a Personnel Assistant  after being given a clean bill of health and cleared for

*Luckey v. United States -Verified Complaint*

*Aff. of Rima Laibow, M.D. (Ex. A)*                                                 5

1   international duty by the Navy on July 11, 2016.

2       7.    Decedent then came aboard her first duty station, the aircraft carrier

3   *U.S.S. Ronald Reagan* in late September, 2016, ready and fit for her new career,

4   which was just before the 5,000 -plus member crew were all ordered to submit to

5   mass "pandemic-style" flu vaccinations by the ship's medical staff, which activity

6   was scheduled to take place during the period of October 5, 2016, through

7   October 7, 2016.

8       8.    But when the Decedent's illness on October 4, 2016 required medical

9   attention from the ship's medical staff in the midst of the confusion and turmoil of

10   the "mass vaccination event" on the *Ronald Reagan* referenced above, a "perfect

11   storm" of ignorance, mis-management, patient abandonment, and continuing

12   medical malpractice on the part of the ship's medical staff resulted in the Decedent

13   being deprived of all reasonable medical care **for five days** until the Decedent

14   died on October 10, 2016.

15       9.    Although the Decedent had notified the ship's medical staff that the

16   Decedent was suffering from a fever, the sick Decedent was first forced to submit

17   to vaccinations on October 4, 2016 (contra-indicated in the manufacturer's

18   instructions and standard medical practice for ill persons with a fever), and when

19   the Decedent became even more ill thereafter, repeated attempts by the Decedent,

20   Decedent's bunkmates and even Decedent's direct supervisor to obtain even

21   minimal medical care for the worsening Decedent were blocked and rebuffed by

22   the ship's medical staff **for that same five days** , presumably because the entire

23   ship's medical staff were all preoccupied with the mass vaccination event. This

24   denial of reasonable medical care and treatment was the proximate cause of the

25   Decedent succumbing to and dying from what had by then become a catastrophic,

26   life-ending sepsis, which was entirely avoidable and preventable by the timely

27

28   *Luckey v. United States -Verified Complaint*
    *Aff. of Rima Laibow, M.D. (Ex. A)*         6

1 administration of appropriate medical treatment in the ship's sick bay.

2     10.    Notably, in a display of indifference and medical malpractice which is

3 shocking to the conscience, the *Reagan's* medical staff failed to perform even the

4 most basic laboratory testing including blood and other materials from the

5 Decedent until the time of or just before the Decedent's death on October 10,

6 2016, at which point the blood tests revealed the Decedent to be in the terminal

7 stages of liver and kidney failure.

8     11.    It is also critical to note that the *Ronald Reagan* was at this time

9 reported to be equipped with a state- of- the- art medical facility, laboratory staff,

10 blood bank, and all necessary and ancillary equipment, all of which were allegedly

11 fully available and functional, and capable of quickly performing determinative

12 blood and other tests on the Decedent at any point during the period of October 5,

13 2016, through the morning of October 10, 2016, had any of the numerous

14 members of the ship's medical staff who saw the Decedent during this period

15 performed their respective medical duties according to the standard of care

16 protocols and practices.

17     12.    It is shocking that none of the duty medical staff or supervisory

18 medical staff were alert, concerned, and/or competent enough to have ordered

19 such medical testing for an obviously extremely- ill patient, who through the

20 inaction and failures of the same medical staff , became the Decedent in this

21 lawsuit. While the Decedent was still alive, the ship's medical staff apparently

22 never even considered performing testing on the Decedent, because the medical

23 staff had already jumped to the convenient but unsupported conclusion that the

24 Decedent "was just down with the flu," in the absence of even the most

25 rudimentary proper medical evaluation of the Decedent and her condition.

26

27

28 *Luckey v. United States -Verified Complaint*
*Aff. of Rima Laibow, M.D. (Ex. A)*

**IV.   Because the Decedent's injuries and wrongful death were the proximate result of the failure of the medical staff of the *USS Ronald Reagan* to treat, in any meaningful way, the Decedent and the Decedent's worsening then fatal medical condition in October, 2016, the *Feres* doctrine does not apply to the claims made hereunder because: (1) the Decedent's injuries and death were neither incident to the Decedent's status as a service member; and (2), nor does resolution of this case require the "second-guessing of military decisions that are directly involved in the management of the armed forces" so decried by the *Feres* Court.**

13.   The U.S. Supreme Court decided in 1950, in <u>Feres v. United States</u>, 340 U.S. 135, 71 S. Ct. 153, 95 L. Ed. 152, that the federal government could not be held liable under the statute known as the Federal Tort Claims Act (28 U.S.C.A. §§ 1291, 1346(b), ©, 1402(b), 2401(b), 2402, 2671-80) for injuries to members of the armed forces arising from activities incident to military service. The Federal Tort Claims Act allows persons intentionally or negligently wronged by a government employee to sue the government for their injuries. The Supreme Court's decision barring suits involving injuries to members of the armed forces became known as the *Feres* doctrine. The doctrine remains in force, as the Supreme Court has rejected attempts to over-rule the decision.

14.   *Feres* involved a suit brought by the executor of a soldier who had died when his barracks caught fire. The executor charged that the United States had been negligent in housing the soldier in barracks whose defective heating system was known to be unsafe. First, the Supreme Court rejected the argument that such a suit could be brought under the Federal Tort Claims Act of 1946, which had waived the government's traditional immunity from claims in many circumstances. Noting that the statute said that "[t]he United States shall be liable … in the same manner and to the same extent as a private individual under like circumstances" (28 U.S.C.A. § 2674), the Court concluded that the relationship between the government and members of its armed forces is "distinctively federal in character." Therefore, it would be anomalous to have the government's liability

*Luckey v. United States -Verified Complaint*

*Aff. of Rima Laibow, M.D. (Ex. A)*

8

1    depend on the law of the state where the soldier was stationed. Second, the Court
2    observed that in several enactments, Congress had established a "no-fault"
3    compensation plan that provides pensions to injured members of the armed
4    services.

5         15.    Commenting on the *Feres* doctrine in <u>United States v. Brown</u>, 348
6    U.S. 110, 75 S. Ct. 141, 99 L. Ed. 139 (1954), the Court emphasized that
7    discipline and "[t]he peculiar and special relationship of the soldier to his
8    superiors" might be affected if suits were allowed under the Tort Claims Act "for
9    negligent orders given or negligent acts committed in the course of military duty."
10   This view became one of the bedrock justifications for the doctrine in the years
11   following *Brown*.

12        16.    The U.S. Supreme Court has stressed that the *Feres* doctrine "cannot
13   be reduced to a few bright-line rules," but rather "each case must be examined in
14   light of the [Tort Claims Act] as it has been construed in *Feres* and subsequent
15   cases" (United States v. Shearer, 473 U.S. 52, 105S. Ct. 3039, 87 L. Ed. 2d 38
16   1985]).

17        17.    If such suits were allowed, "commanding officers would have to stand
18   prepared to convince a civilian court of the wisdom of a wide range of military and
19   disciplinary decisions."

20        18.    In contrast, the facts of the case now before this Court neither involve
21   "injuries or death sustained in activities incident to military service [*i.e.*, the
22   Decedent was ill when she first came aboard the *USS Ronald Reagan,* and the
23   Decedent died because of the failure of the ship's medical staff to treat the
24   Decedent and Decedent's continuing illness/ serious medical condition.

25        19.    Similarly, a finding of liability against the Navy for the failure of the
26   *USS Ronald Reagan's* medical staff to treat the Decedent and the Decedent's
27
28   *Luckey v. United States -Verified Complaint*

     *Aff. of Rima Laibow, M.D. (Ex. A)*           9

1  serious medical condition does not require the "second-guessing" of any superior
2  officer's orders or judgments, as none seem to have been made, for better or for
3  worse, in connection with the Decedent and the non-treatment of Decedent's
4  ultimately fatal case of sepsis.

5
6        ## V.  PARTIES, JURISDICTION AND VENUE

7        20.    Plaintiff DERRICK LUCKEY, age 59, the executor ("Executor") of
8  the estate of his deceased daughter, Danyelle A. Luckey ("Decedent"), is the duly
9  appointed executor of the estate of the Decedent, and copies of his Letters
10 Testamentary are attached hereto as **Exhibit A** and are hereby made a part hereof.

11       21.    Plaintiffs DERRICK LUCKEY and ANNETTE  LUCKEY
12 (collectively, "Plaintiffs") are the father and mother of the Decedent, respectively,
13 both of whom reside together in Contra Costa County, California, and both
14 Plaintiffs are subject to the jurisdiction of this Court.

15       22.    The Decedent was 23 years of age, unmarried, and without children at
16 the time of her death on October 10, 2016, and Decedent had a life expectancy of at
17 least fifty-three (53) years beyond the actual date of her death.

18       23.    The Decedent was on active duty in the United States Navy aboard the
19 aircraft carrier *U.S.S. Ronald Reagan* in international waters of the Yellow Sea
20 during the period of October 4 through October 10, 2016.

21       24.    In October, 2016, Defendants United States of America, and United
22 States Department of the Navy had engaged employees, agents and contractors as
23 its staff of medical professionals aboard the *U.S.S. Ronald Reagan*, and all such
24 medical professionals were acting in the ordinary course of, and within the scope of
25 their employment with respect to any and all medical acts, omissions, or medical
26 treatment rendered by such persons to the Decedent during the period of October 4,

27
28 *Luckey v. United States -Verified Complaint*
   *Aff. of Rima Laibow, M.D. (Ex. A)*                               10

1 | 2016, through and including October 10, 2016, and as such, Defendants United
2 | States of America, and United States Department of the Navy are liable for the
3 | negligent acts and omissions of their agents, servants, and employees under the
4 | doctrine of *respondeat superior* and *agency*, under the theory of *vicarious liability*,
5 | and in accordance with the Federal Tort Claims Act, 28 U.S.C. Chapter 171 *et seq.*.

6 |     *25.* Defendants United States of America, and United States Department
7 | of the Navy are both subject to the jurisdiction of this Court pursuant to
8 | 28 U.S.C. § 1346(b)(1).

9

10 | **VI.   FACTUAL ALLEGATIONS**

11 |     26.    The *USS Ronald Reagan* is a nuclear-powered supercarrier in the
12 | service of the United States Navy. The ninth ship of her class, she is named in
13 | honor of Ronald W. Reagan, president of the United States from 1981 to 1989.  In
14 | October, 2016, the *Ronald Reagan* was forward-deployed to the 7th Fleet area of
15 | operations in the Yellow Sea in support of security and stability operations in the
16 | Indo-Asia-Pacific.

17 |     27.    The *USS Ronald Reagan* has been reported to include a fully
18 | functional medical department, consisting of corpsmen and medical officers who
19 | provide medical services to the ship's crew.

20 |     28.    In October, 2016, the medical department of the *USS Ronald Reagan*
21 | was reported to be fully combat- ready and mission-ready, including operating a 63
22 | bed state- of- the- art medical facility, laboratory staff and equipment, all of which
23 | were represented to be fully available and functional, and were capable of, and
24 | were responsible to initiate a wide range of  determinative blood and other medical
25 | tests.  In reality, however, the ship's sick bay contained less than six (6) beds for
26 | the medical treatment of ill or injured sailors.

27

28 | *Luckey v. United States -Verified Complaint*
*Aff. of Rima Laibow, M.D.  (Ex. A)*         11

29.     In October, 2016, contrary to representations made to the public, the *USS Ronald Reagan*'s medical department did not include a blood bank nor did the medical department store blood plasma for IV infusion.  Blood products were therefore not available for transfusion to ill or injured sailors aboard ship, and accordingly, the *USS Ronald Reagan* was neither combat-ready nor mission-ready, contrary to official reports, because the ship's medical staff could neither transfuse blood products or perform emergency surgery.

30.     Accordingly,  unlike even a rudimentary land-based medical clinic, the persons responsible for planning and organizing medical care for the sailors aboard the *Ronald Reagan*  medical department elected to forego the expense associated with maintaining a functional blood bank; instead such persons directed that the ship's medical staff set up and organize a "donor pool" of sailors for medical staff to call upon to obtain specific blood types. Obviously, a "blood "donor pool" arrangement would be ineffective to deal with a medical emergency requiring immediate blood transfusion.

31.     On information and belief, and upon such belief it is alleged, that the persons responsible for planning and organizing the medical department of the *Ronald Reagan* further elected to "economize" on the costs of medical care for sailors aboard that state of the art aircraft carrier by establishing a policy of  "med-evacuating" by helicopter all but the most routine medical cases, thereby transferring the costs of medical care for such persons to land-based military medical facilities.

32.     On information and belief, and upon such belief it is alleged, in "complying" with, *inter alia,* the foregoing and other "economizing" policies ordered by persons responsible for planning and organizing the medical department of the *Ronald Reagan*, the ship's medical department was deliberately and directly

*Luckey v. United States -Verified Complaint*
*Aff. of Rima Laibow, M.D. (Ex. A)*                                    12

1  underfunded to the degree the ship's medical staff could not effectively carry out
2  its assigned task of providing an acceptable degree of medical care to sick or
3  injured sailors due to the absence and lack of adequate facilities, equipment and
4  supplies, thereby making it physically impossible for such medical department to
5  function at any acceptable level of medical readiness, and such clear and evident
6  lack of "medical readiness" aboard the *Ronald Reagan* was deliberately and
7  intentionally concealed and hidden from the ship's crew, the families of crew
8  members, and the public.

9      33.     On information and belief, and upon such belief it is alleged, the
10 foregoing "economizing" policies, *inter alia,* ordered by persons responsible for
11 planning and organizing the medical department of the *Ronald Reagan* resulted in
12 the ship's medical department being essentially dysfunctional, making the prospect
13 of proper medical care aboard ship for sailors who might become seriously ill
14 and/or seriously injured, including but not limited to the Decedent illusory, false
15 and misleading.

**Decedent Danyelle Luckey Goes Aboard a Ship<br>That is Not Medically Ready for Its Mission**

16
17      34.     In late September, 2016, Decedent, an active-duty employee of the
18 United States Navy who had been approved by the U.S. Navy for Overseas
19 Assignments in July, 2016, went onboard the *U.S.S. Ronald Reagan* in Guam as
20 Decedent's first duty station in the Navy in the capacity as a Personnel Assistant.
21      35.     On or about October 3, 2016, the *U.S.S. Ronald Reagan* was the only
22 "forward" U.S. aircraft carrier in the Pacific Ocean, and such ship was cruising in
23 international waters in the Yellow Sea, with Decedent aboard.
24      36.     On October 3, 2016, the command of the *U.S.S. Ronald Reagan* issued
25 USS Ronald Reagan (CVN 76) Notice 5050, which provided for a "pandemic
26 event" style mass vaccination of the more than 3,200 members of the ship's
27

28 *Luckey v. United States -Verified Complaint*

*Aff. of Rima Laibow, M.D. (Ex. A)*                                    13

1  company and the more than 2,400 members of the ship's air wing.

2      37.    In particular, "REAGANNOTE 5050" required all of the more than
3  5,600 members of the crew of the *Ronald  Reagan* to be fully vaccinated with the
4  flu vaccine in three days, between 0830 and 1500 hours each day, or more than 294
5  vaccinations per hour, as if the Navy were actually in a pandemic event.

6      38.    "REAGANNOTE 5050" also proposed a "Patient Flow Through
7  Medical Spaces" as the route for crew members to take through the medical space
8  for their vaccinations.  The "Patient Flow" diagram shows that almost the entire
9  medical space of the *Ronald Reagan* had to be utilized and taken over for the
10  "pandemic event" vaccination process for crew members during the October 4 - 6
11  mass vaccination on board ship.

12      39.    In the event, the medical staff of the *Ronald Reagan* "jump-started"
13  the mass "pandemic event" vaccination on Monday, October 3, 2016, instead of
14  Tuesday, October 4, 2016 as set forth in "REAGANNOTE 5050," apparently to
15  give medical staff additional time to complete all vaccinations by the deadline of
16  October 6, 2016.

17      40.    On Tuesday, October 3, 2016, Decedent did not attend "GQ" in the
18  *Ronald Reagan's* Administration Department, reportedly because of illness.
19  Decedent was in her rack, denied sea-sickness, but reported fever and nausea.
20  Sworn Statement of Administration Department LPO, p. 1, bate-stamped pages 146
21  -148, attached hereto and hereby made a part hereof.

22      41.    On Wednesday, October 4, 2017, Decedent was required to attend sick
23  bay for "Active Duty Influenza Vaccine Screening," and Decedent reported thereon
24  that Decedent was "sick  or had a fever."

25      42.    The command of the *U.S.S. Ronald Reagan* had issued, along with
26  USS Ronald Reagan (CVN 76) Notice 5050, a "Standing Order for Administering

27

28  *Luckey v. United States -Verified Complaint*
    *Aff. of Rima Laibow, M.D.  (Ex. A)*        14

1 Influenza Vaccine [sic] to Adults, 2016 - 2017" which listed a <u>precaution</u> for the
2 administration of vaccines, for persons with "moderate or severe illness, with or
3 without fever."

4     43.    Notwithstanding the Decedent's disclosure and documentation of her
5 illness and fever to Navy personnel, the decision was made to require the Decedent
6 to submit to a vaccination that day, without further medical consultation, in
7 violation of "Standing Order for Administering Influenza Vaccine [sic] to Adults,
8 2016 - 2017" , and vaccines were duly administered to the Decedent that same day
9 [October 4, 2016].   "Active Duty Influenza Vaccine Screening" document
10 executed by the Decedent.

11     44.    Notwithstanding the Decedent's disclosure of her illness and fever to
12 Navy medical personnel in the "Active Duty Influenza Vaccine Screening"
13 document executed by the Decedent, the Decedent was required to submit to a
14 vaccination on October 4, 2016, by a corpsman who vaccinated 400 to 500 other
15 crew members that day, who could not remember whether any medical staff was
16 involved in any way with the decision to go ahead with the administration of
17 vaccines to the Decedent while the Decedent was ill with a fever.

18     45.    On Wednesday, October 5, 2016, at 0900, the Decedent was assisted
19 to go to the *Ronald Reagan* sick bay for her worsening fever, nausea and vomiting,
20 where the medical staff there dismissed the Decedent's complaints as "sea-
21 sickness," even though the Decedent denied ever suffering from sea-sickness.  The
22 medical staff told the Decedent to drink lots of water, but such medical staff failed
23 and refused to diagnose or treat the Decedent for anything other than seasickness,
24 and such staff further failed and refused to perform an adequate medical evaluation
25 of the Decedent or to order any laboratory tests, including blood, urine, or sputum
26 testing for treatment of Decedent's increasingly serious but undiagnosed illness.  .
27

28 *Luckey v. United States -Verified Complaint*
  *Aff. of Rima Laibow, M.D. (Ex. A)*

46.     On information and belief, and upon such belief it is alleged, that medical staff of the *Ronald Reagan* failed to document the negligible treatment for "seasickness" rendered by the ship's medical staff to the Decedent on October 5, 2016, or that other senior Navy personnel have removed and/or deleted any and all such records, as no such records have been produced to the Plaintiffs.

47.     On October 6, 2017, the Decedent was once again helped by her bunkmates  to return to the *Ronald Reagan* sick bay because Decedent's illness had gotten much worse, and the Decedent's fever had gotten so high the Decedent was "sweating through her clothing."  The medical staff on duty diagnosed the Decedent as having fever and "URI" from the "flu," and prescribed only ibuprofen, Motrin, Pepto-Bismol, Gatorade, and nausea pills for the Decedent, but such medical staff did not otherwise perform any medical evaluation of the Decedent and her condition, nor did such medical staff order any laboratory testing  of the Decedent's blood, urine, or sputum,  of any kind.

48.     On information and for the "flu" rendered by the ship's medical staff to the Decedent on October 6, 2016, or other senior Navy personnel have removed and/or deleted any and all such records, as no such records have been produced to the Plaintiffs.

49.     Several of Decedent's bunkmates have given sworn statements to the effect that, on October 6, 2016, the Decedent was given "48 hour SIQ" by the ship's medical staff for "fever" and "URI," but that no medical treatment was given, nor was any medical evaluation conducted, nor were any laboratory tests conducted on the Decedent's blood, fluid, or tissue, nor was an adequate medical examination performed on the Decedent, which would have included auscultation, pulmonary and immunological evaluations of the Decedent,  to help diagnose and treat the Decedent's deteriorating medical condition.

*Luckey v. United States -Verified Complaint*
*Aff. of Rima Laibow, M.D. (Ex. A)*

16

50.     te Navy has produced to the Plaintiffs a copy of a document entitled "Modified Duty Authorization Chit," dated **October 7, 2016**, in which the Decedent was given "48 hours SIQ" allegedly on **October 7, 2016**, listed as the "treatment" for Decedent's "fever" and "URI," which document was signed by Kristopher Carter, DO.

51.     On information and belief, and upon such belief it is alleged, that the discrepancy between the sworn testimony of four (4) of the Decedent's bunkmates that the "Modified Duty Authorization Chit" for "48 hours SIQ" was issued to the Decedent on **October 6, 2016**, and not **October 7, 2016** as set forth on the document attached hereto as **Exhibit N** is because **Exhibit N** was "manufactured" after the event as part of a attempt by Navy personnel to "cover up" the failure and refusal of the medical staff of the *Ronald Reagan* to provide any reasonable medical care to the Decedent on October 5 and 6, 2016, while the mass "pandemic-event" vaccination program was monopolizing the entire medical staff and sick bay facilities of the *Ronald Reagan*.

52.     In any event, during the period of October 7 through the early morning of  October 10, 2016, as the Decedent's illness caused her condition to deteriorate so greatly that the Decedent had lost feeling and control of her legs and could no longer walk unassisted, the Decedent, her bunkmates, and her LPO all made repeated efforts to obtain medical attention and care for the Decedent from the ship's medical staff, only to have the Decedent's grave condition dismissed as "just the flu," and where the Decedent was told "just drink more Gatorade," without the ship's medical staff:

    (a)    any proper  medical evaluation of the Decedent ever taking place during such period;

    (b)    without any laboratory, blood, or other testing being ordered or

performed on or for the Decedent to diagnose the Decedent's failing health condition during such period; and

( c)   where the repeated efforts of Decedent, Decedent's LPO, and Decedent's bunkmates in literally begging the ship's medical staff for even minimal medical care for the now-collapsing Decedent were ignored, rebuffed and dismissed without being given any consideration or hearing during such period.

Instead, such medical staff rebuked the Decedent for leaving her berth and ordered her back to her berth, and the Decedent was ordered to drink more Gatorade.

53.   On the morning of October 9, 2016, the Decedent was yet again taken by her bunkmates to the ship's sick bay because the Decedent had fallen on the floor and could no longer walk and had great pain in her legs, to the extent that Decedent's bunkmates had to lift the Decedent's legs and feet up the hatchway; the response of the ship's medical staff was to issue yet another "24 hour SIQ" for "vomiting." Navy records show that the Decedent was instructed to "F/U [follow up] during sick call tomorrow morning [October 10, 2016].

54.   As above, once again, on the morning of October 9, 2016, the medical staff of the *Ronald Reagan* had failed and refused to: (1), conduct a proper  medical evaluation of the Decedent; (2), order even the most basic blood or other testing be performed on the Decedent's blood, tissues, or organs  to make a proper differential diagnosis; and (3), take into consideration the expressed concerns of Decedent, Decedent's LPO, and Decedent's bunkmates concerning the Decedent's grave and deteriorating medical condition, only to have such concerns  rebuffed and dismissed without being given any consideration or hearing.

55.   Notwithstanding the Decedent's worsening condition, on the evening

1  of October 9, 2016, when the Decedent's bunkmates carried the Decedent to the
2  sick bay, the medical staff of the *Ronald Reagan* refused to allow the Decedent to
3  receive any treatment in the ship's sick bay because "medical said they couldn't
4  keep her [Decedent] up there [sick bay] because it was noisy , they were working
5  on the floor."

6      56.    Late in the evening of October 9, 2016, the Decedent collapsed on the
7  floor near her berth, and was unable to move her legs fully.  When called to the
8  scene, the ship's medical corpsmen scornfully refused to assist the Decedent to the
9  ship's sick bay, and the Decedent's bunkmates themselves were required to carry
10 the Decedent to the sick bay to receive any medical treatment.

11     57.    After the Decedent was admitted into the sick bay of the *Ronald*
12 *Reagan* in the early morning hours of October 10, 2016, the day of the Decedent's
13 death, the medical staff continued to dismiss the Decedent's illness as merely the
14 "flu," and, once again, failed and refused to:  (1), conduct a proper  medical
15 evaluation of the Decedent; (2), order even the most basic blood or other testing
16 tests be performed on the Decedent's blood, tissues, or organs to make a proper
17 differential diagnosis; and (3), take into consideration the expressed concerns of
18 Decedent, Decedent's LPO, and Decedent's bunkmates concerning the Decedent's
19 grave and increasingly deteriorating medical condition, only to have such concerns
20 rebuffed and dismissed without being given any consideration or hearing.

21     58.    At about 9:30 a.m. on the morning of October 10, 2016, a different,
22 new member of the medical staff of the *Ronald Reagan* who had never before seen
23 or treated the Decedent came on duty in the ship's sick bay, and immediately
24 became concerned about the Decedent's dusky, grey color and lack of sensation in
25 her extremities, and caused the blood tests to be conducted upon the Decedent, and
26 when the results thereof became available, such blood results included  no
27

28 *Luckey v. United States -Verified Complaint*
   *Aff. of Rima Laibow, M.D. (Ex. A)*              19

hemoglobin reading, indicating either that the blood test was the result of a faulty blood draw or that the patient's hemoglobin level was so low as to be inconsistent with life; Decedent's blood tests taken that morning further disclosed that the Decedent had further deteriorated into either death or end-stage liver and kidney failure.

59.   The laboratory blood tests conducted on the Decedent's blood on the morning of October 10, 2016, shortly before or immediately after the demise of the Decedent, were the only clinical laboratory tests ever performed on the Decedent by the medical staff of the *Ronald Reagan* at any time.

60.   At the time of or shortly after the laboratory blood tests on the Decedent's blood referenced above were performed, the Decedent suffered a cardiac arrest.  Navy medical records for the Decedent state that the ship's medical staff administered an unknown "resurrection fluid" and were able to resuscitate the Decedent one time, notwithstanding faulty and defective equipment, but that such medical staff were unable to revive the Decedent when she suffered a subsequent cardiac arrest, and the Decedent died, at approximately 1335 hours, October 10, 2016.

61.   During the course of the treatment and care provided by the medical staff of the *U.S.S. Ronald Reagan* to the Decedent during the period of October 5, 2016, through and including October 10, 2016, such medical staff failed to exercise that degree of skill and care required of the medical profession in general under similar conditions and like surrounding circumstances, as specifically stated and set forth in the affidavit of Dr. Rima Laibow, M.D.,  attached hereto as **Exhibit A** and hereby made a part hereof.

62.   Defendants, Defendants' employees, agents and contractors, and each of them, at all times relevant and material hereto, recklessly, negligently, and

*Luckey v. United States -Verified Complaint*

*Aff. of Rima Laibow, M.D. (Ex. A)*                                    20

1   carelessly failed to exercise reasonable care for the benefit of the Decedent's
2   health, welfare, and well-being, and moreover breached the applicable standard of
3   care, including but not limited to the following particulars:

4      (A)   Defendants, Defendants' employees, agents and contractors were
5            reckless, careless,  and breached the applicable standard of care when
6            they failed to perform a proper and adequate medical history of the
7            Defendant and her condition beginning on October 5, 2016, and
8            continuing through to the time of the Decedent's death on October 10,
9            2016;

10     (B)   Defendants, Defendants' employees, agents and contractors were
11           reckless, careless and   and further breached the applicable standard of
12           care when they failed to obtain and consider relevant and pertinent
13           information from the Decedent, Decedent's LBO, and Decedent's
14           bunkmates as part of any ongoing medical evaluation of the Decedent;

15     ( C)  Defendants, Defendants' employees, agents and contractors were
16           reckless, careless and  when they failed to carefully monitor the
17           Decedent's condition as part of any ongoing medical evaluation of the
18           Decedent;

19     (D)   Defendants, Defendants' employees, agents and contractors were
20           reckless, careless and   and further breached the applicable standard of
21           care when they failed to perform a proper medical evaluation of the
22           Defendant's condition beginning on October 5, 2016, and continuing
23           through to the time of the Decedent's death on October 10, 2016;

24     (E)   Defendants, Defendants' employees, agents and contractors were
25           reckless, careless and further breached the applicable standard of care
26           when they failed to order any clinical laboratory tests on the

27

28   *Luckey v. United States -Verified Complaint*
     *Aff. of Rima Laibow, M.D. (Ex. A)*                              21

Decedent's blood, sputum, tissue, or organs to evaluate and diagnose the Defendant's medical condition beginning on October 5, 2016, and continuing through to the time of the Decedent's death on October 10, 2016;

(F) Defendants, Defendants' employees, agents and contractors were reckless, careless and further breached and breached the applicable standard of care when they failed to perform a proper differential diagnosis for the Defendant's condition beginning on October 5, 2016, and continuing through to the time of the Decedent's death on October 10, 2016;

(G) Defendants, Defendants' employees, agents and contractors were reckless, careless and further breached and breached the applicable standard of care when they failed to recommend further and additional diagnostic tests and treatment in response to the Decedent's symptoms throughout their continuing care and treatment of the Decedent from October 5, 2016, and continuing through to the time of the Decedent's death on October 10, 2016;

(H) Defendants, Defendants' employees, agents and contractors were reckless, careless and further breached and breached the applicable standard of care when they failed to recommend that the Decedent be med-evacuated from the *U.S.S. Ronald Reagan* in a timely manner to a land-based hospital or other medical center capable of and willing to perform further and additional diagnostic tests and treatment on the Decedent beyond those available aboard the *Ronald Reagan* in response to the Decedent's worsening symptoms throughout their continuing care and treatment of the Decedent from October 5, 2016,

and continuing through to the time of the Decedent's death on October 10, 2016;

(I)   Defendants, Defendants' employees, agents and contractors were reckless, careless and further breached   and breached the applicable standard of care when they failed to initiate any medical treatment of any kind for the Decedent's worsening symptoms of systemic infection or sepsis throughout their continuing care and treatment of the Decedent from October 5, 2016, and continuing through to the time of the Decedent's death on October 10, 2016; and

(J)   Defendants, Defendants' employees, agents and contractors were reckless, careless and further breached the applicable standard of care when they failed to assure that the life-saving cardiac resuscitation equipment aboard the *Ronald Reagan* needed for cardiac and other emergencies was functional and in good working order, in violation of standard practice and applicable medical protocols.

63.   The standard of care applicable in California to medical doctors and medical staff in like surrounding conditions would have required such medical staff of the *U.S.S. Ronald Reagan* to have performed each and every of the activities set forth in the preceding paragraph for the Decedent on or very shortly after October 5, 2016.

64.   Plaintiffs affirmatively allege and aver that had the Defendants' employees, agents, and contractors, and each of them, forming the medical staff of the *U.S.S. Ronald Reagan*, conformed to the applicable standard of care in the diagnosis, treatment, care and advice they rendered to the Decedent, the Decedent would not have suffered the aforementioned damages, losses, and death as set forth herein.

65.     Plaintiffs affirmatively allege and aver that had the Defendants' employees, agents, and contractors, and each of them, forming the medical staff of the *U.S.S. Ronald Reagan*, had a strict duty to treat, diagnose, and care for the Decedent in comport with the applicable standard of care of practicing medical providers in the same specialties or areas of practice, as Defendants' employees, agents, and contractors so acting practiced during the period of October 4, 2016, through and including October 10, 2016, the date of the unnecessary and preventable death of the Decedent, such death of the Decedent could have been prevented.

66.     Plaintiffs affirmatively allege and aver that the Defendants' employees, agents, and contractors, and each of them, forming the medical staff of the *U.S.S. Ronald Reagan* who ever treated the Decedent, breached said duty of care with respect to the Decedent, and that such breach was the actual and proximate cause of all the Decedent's damages, injuries, pain and suffering, mental anguish and losses, and death which are the subject of this lawsuit.

67.     As set forth in the Affidavit of Dr Rima Laibow, M.D., attached hereto as **Exhibit A** and hereby made a part hereof, the continuing failure of the medical staff of the *U.S.S. Ronald Reagan* to perform each and every one of the actions set forth in the preceding paragraphs with respect to Decedent, constitutes a failure by such persons to exercise that degree of skill and care ordinarily required by the medical profession in general under like conditions and similar circumstances.

## COUNT I

### Failure to Treat/ Medical Malpractice

68.     Plaintiffs hereby re-allege and incorporate herein by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

*Luckey v. United States -Verified Complaint*

*Aff. of Rima Laibow, M.D. (Ex. A)*                                          24

69.    In October, 2016, Defendants United States of America, and United States Department of the Navy had engaged employees, agents and contractors as its staff of medical professionals aboard the *U.S.S. Ronald Reagan*, and all such medical professionals were acting in the ordinary course of, and within the scope of their employment with respect to any and all medical acts, omissions, or medical treatment rendered by such persons to the Decedent during the period of October 4, 2016, through and including October 10, 2016, and as such, Defendants United States of America, and United States Department of the Navy are liable for the failure to treat and omissions of their agents, servants, and employees under the doctrine of *respondeat superior* and *agency*, under the theory of *vicarious liability*, and in accordance with the <u>Federal Tort Claims Act</u>, 28 U.S.C. Chapter 171 *et seq.*.

70.    As a result of the failure to treat and medical malpractice of Defendants,  Defendants' employees, agents and contractors as set forth herein and in the Affidavit of Dr. Rima Laibow, M.D., attached hereto as **Exhibit A** and hereby made a part hereof, including but not limited to the fact that such Defendants allowed and acquiesced in the *Ronald Reagan* leaving port with only defective and non-functioning cardiac resuscitation and life-saving equipment aboard, Defendants injured and damaged Decedent in an amount to be determined at trial.

71.    As set forth in the Affidavit of Dr. Rima Laibow, M.D., attached hereto as **Exhibit A** and hereby made a part hereof, the failure of Defendants' employees, agents and contractors to perform each and every one of the actions set forth in the paragraphs above including Paragraphs 63 -65 above with respect to Danyelle A. Luckey, constitutes a failure by such persons to exercise that degree of skill and care ordinarily required by the medical profession in general under like conditions and similar circumstances for which Defendants are liable.

*Luckey v. United States -Verified Complaint*
*Aff. of Rima Laibow, M.D.  (Ex. A)*                                        25

72.     The failure of Defendants' employees, agents and contractors to exercise the above-detailed standard of care in the treatment of Decedent was negligent, and such carelessness and failure to treat on the part of such persons was the proximate cause of the injuries and damages, including but not limited to unnecessary and exacerbated  pain, suffering and mental anguish, suffered by Decedent during the period of October 5, 2016, up to and including the moment immediately preceding Decedent's death on October 10, 2016.

73.     This breach of the duty and standard of care and treatment required of and from Defendants' employees, agents and contractors to the Decedent to a reasonable degree of medical certainty caused the injuries and damages, including but not limited to unnecessary and exacerbated pain, suffering and mental anguish, suffered by the Decedent during the period of October 5, 2016, up to and including the moment immediately preceding Decedent's death on October 10, 2016.

74.     On information and belief, at all times relevant hereto, Defendants' employees, agents and contractors were employed by Defendants to provide, on behalf of Defendants, medical care and treatment to Navy active duty employees including but not limited to Decedent.  Defendants are, accordingly, jointly and severally liable for the damages inflicted by the failure of such persons to trat the Decedent, including but not limited to unnecessary and exacerbated pain, suffering and mental anguish, suffered by the Decedent during the period of October 5, 2016, up to and including the moment immediately preceding Decedent's death on October 10, 2016, due to the failure to treat and medical malpractice and medical malpractice of  Defendants' employees, agents and contractors .

75.     Pursuant to applicable California law, the death of the Decedent on October 10, 2016 does not abate Decedent's cause of action for the failure of the ship's medical staff to treat the Decedent and Decedent's serious medical condition

*Luckey v. United States -Verified Complaint*

*Aff. of Rima Laibow, M.D. (Ex. A)*                                      26

and medical malpractice committed by Defendants' employees, agents and contractors against Decedent prior to Decedent's death on October 10, 2016. Instead, such cause of action for the pain, suffering, and mental anguish suffered by Decedent up to and immediately prior to her death due to the failure to treat and medical malpractice of Defendants' employees, agents and contractors survive to Decedent's survivors at law or Decedent's personal representative.

76.     Accordingly, Defendants UNITED STATES OF AMERICA, and the UNITED STATES DEPARTMENT OF THE NAVY are liable to Decedent's father and mother, plaintiffs DERRICK LUCKEY and ANNETTE LUCKEY, for the unnecessary and exacerbated pain, suffering, and mental anguish suffered by Decedent prior to her death on October 10, 2016, due to the failure to treat Decedent and Decedent's serious medical condition and medical malpractice of Defendants' employees, agents and contractors, in an amount to be determined at trial.

## COUNT II

**Wrongful Death Due to Failure to treat and medical malpractice and Medical Malpractice**

77.     Plaintiffs hereby re-allege and incorporate herein by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

78.     The failure to treat and Decedent and Decedent's serious medical condition and medical malpractice of Defendants' employees, agents and contractors as set forth herein and in the Affidavit of Rima Laibow, M.D., attached hereto as **Exhibit A** and hereby made a part hereof, and the failure of Defendants' employees, agents and contractors  to exercise the standard of care set forth in Paragraph 39 above was, to a reasonable degree of medical certainty, the proximate

*Luckey v. United States -Verified Complaint*

*Aff. of Rima Laibow, M.D. (Ex. A)*                                    27

1  cause of the death of the Decedent on October 10, 2016.

2      79.    As set forth in the Affidavit of Dr Rima Laibow, M.D., attached hereto

3  agents and contractors to perform each and every one of the actions set forth in

4  Paragraphs 39 and 63 - 65 above with respect to Danyelle A. Luckey, constitutes a

5  failure by Defendants' employees, agents and contractors to exercise that degree of

6  skill and care ordinarily required by the medical profession in general under like

7  conditions and similar circumstances, for which Defendants are liable.

8      80.    The failure of Defendants' employees, agents and contractors to

9  exercise the above-detailed standard of care in the treatment of Decedent was a

10  breach of such standard of care, and such failure to treat and medical malpractice

11  on  the part of Defendants' employees, agents and contractors was the proximate

12  cause of the death of the Decedent on October 10, 2016.

13      81.    The breach of the duty and standard of care and treatment required of

14  and from Defendants' employees, agents and contractors to Decedent to a

15  reasonable degree of medical certainty caused the death of the Decedent on

16  October 10, 2016.  Had the proper medical treatment been provided to the

17  Decedent as specified herein, it is overwhelmingly likely that the Decedent could

18  have been prevented from dying of sepsis on October 10, 2016.

19      82.    The breach of duty by Defendants' employees, agents and contractors

20  with respect  to the Decedent as outlined above, to a reasonable degree of medical

21  certainty, has directly, proximately caused and resulted in the death of Decedent on

22  October 10, 2016.

23      83.    The failure to treat and medical malpractice of  Defendants'

24  employees, agents and contractors as set forth above was the direct and proximate

25  cause of Decedent's death on October 10, 2016, for which defendants UNITED

26  STATES OF AMERICA, and the UNITED STATES DEPARTMENT OF THE

27

28  *Luckey v. United States -Verified Complaint*

*Aff. of Rima Laibow, M.D. (Ex. A)*                    28   .

1  NAVY are jointly and severally liable.

2      84.    Plaintiffs DERRICK LUCKEY and ANNETTE LUCKEY, as

3  surviving parents of Decedent, bring this action under the laws of the State of

4  California, California Code of Civil Procedure §§ 377.60 and 377.61, to recover

5  the full value of the life of the Decedent from defendants UNITED STATES OF

6  AMERICA, and the UNITED STATES DEPARTMENT OF THE NAVY, jointly

7  and severally, without any deduction for necessary or other personal expenses that

8  would have been incurred by the Decedent had she lived.

9

10                                  **COUNT III**

11                **Negligent Infliction of Emotional Distress –**

12                        **Annette and Derrick Luckey**

13     85.    Plaintiffs hereby re-allege and incorporate herein by reference the

14  allegations set forth in the preceding paragraphs as though fully set forth herein.

15     86.    At all times after the date the Decedent came aboard the *Ronald*

16  *Reagan* in September, 2016, through and including October 6, 2016, Decedent

17  maintained a constant and regular dialogue with her parents in California via text-

18  messaging, in which the Decedent set forth details concerning the failure and

19  refusal of the medical staff of the *Ronald Reagan* to provide any medical care

20  whatsoever for the Decedent's steadily-deteriorating medical condition.

21     87.    Decedent thus kept her mother and father fully apprised and informed

22  of the unreasonable failure and refusal of the medical staff of the *Ronald Reagan* to

23  provide any medical care whatsoever for the Decedent's steadily-deteriorating

24  medical condition.

25     88.    In October, 2016, Plaintiffs Annette and Derrick Luckey were helpless

26  to assist the Decedent, their child, obtain any medical care and treatment aboard the

27

28  *Luckey v. United States –Verified Complaint*
    *Aff. of Rima Laibow, M.D.  (Ex. A)*                              29

1   *Ronald Reagan.*

2   　　89.　　Plaintiffs Annette and Derrick Luckey became increasingly worried,
3   fearful, and anguished about the rapidly-deteriorating medical condition of the
4   Decedent and the reported failure and refusal of such medical staff to provide
5   medical care and treatment to the Decedent, beginning October 3, 2016.

6   　　90.　　On information and belief , and upon such belief it is alleged, that on
7   October 6, 2016 and thereafter until shortly before Decedent's death on October
8   10, 2016, the Decedent told the medical staff of the Ronald Reagan that Decedent's
9   parents had been informed of the Decedent's worsening medical condition, and
10  Decedent further requested that such medical staff  inform the Decedent's parents
11  of  the Decedent's steadily-worsening medical condition and about any treatment
12  plan which such medical staff might propose for the Decedent.

13  　　91.　　Notwithstanding the Decedent's repeated requests that the medical
14  staff of the *Ronald Reagan*  inform the Decedent's parents of  the Decedent's
15  steadily-worsening medical condition and about any treatment plan which such
16  medical staff might propose for the Decedent, but Decedent's requests were
17  refused.

18  　　92.　　n failing and refusing to provide any medical care and treatment for
19  the Decedent from October 5, 2016, through the morning of October 10, 2016, the
20  date of the Decedent's death, the medical staff of the *Ronald Reagan* displayed a
21  conscious and deliberate indifference to the catastrophic damages likely to result to
22  the Decedent from such failure to treat and medical malpractice.

23  　　93.　　The mother and father of the Decedent witnessed, via text-
24  messaging, the physical pain, distress and anguish of the Decedent as Decedent
25  reported to her parents the continuing failure and refusal of the medical staff of the
26  *Ronald Reagan* to provide medical care and treatment for the Decedent as the

27

28  *Luckey v. United States -Verified Complaint*
    *Aff. of Rima Laibow, M.D. (Ex. A)*　　　　　　　　　　　　　30

1  Decedent's medical condition steadily worsened, which ultimately resulted in the
2  Decedent's death on October 10, 2016.

3      94.   Plaintiffs Annette and Derrick Luckey suffered their own extreme,
4  unreasonable pain, anguish and mental distress from witnessing, via text
5  messaging, the agony, extreme physical pain, paralysis, mental distress and anguish
6  of the Decedent as Decedent reported to her parents the continuing failure and
7  refusal of the medical staff of the *Ronald Reagan* to provide medical care and
8  treatment for the Decedent as the Decedent's medical condition steadily worsened,
9  which ultimately resulted in the Decedent's death on October 10, 2016.

10     95.   Defendants' employees, agents and contractors were employed by
11 Defendants to provide, on behalf of Defendants, medical care and treatment to
12 Navy active duty employees  including but not limited to Decedent.  Defendants
13 are, accordingly, jointly and severally liable for the injuries and damages, including
14 but not limited to unnecessary and exacerbated pain, suffering and mental anguish,
15 suffered by the parents of the Decedent during the period of October 5, 2016, up to
16 and including the moment immediately preceding Decedent's death on October 10,
17 2016, due to the failure to treat and medical malpractice of  Defendants'
18 employees, agents and contractors .

19     96.   Accordingly, Defendants UNITED STATES OF AMERICA, and the
20 UNITED STATES DEPARTMENT OF THE NAVY are liable to Decedent's father
21 and mother, plaintiffs DERRICK LUCKEY and ANNETTE LUCKEY, for their
22 own unnecessary and exacerbated pain, suffering, and mental anguish suffered by
23 Decedent prior to her death on October 10, 2016, due to the failure to treat and
24 medical malpractice of Defendants' employees, agents and contractors, in an
25 amount to be determined at trial.

26
27
28 *Luckey v. United States -Verified Complaint*
   *Aff. of Rima Laibow, M.D. (Ex. A)*                                    31

1

## COUNT IV

2

### Estate Claims

3   **97.**   Plaintiff DERRICK LUCKEY in his capacity as executor ("Executor")

4   of the estate of the decedent Danyelle A. Luckey ("Decedent") hereby re-alleges

5   and incorporates herein by reference the allegations set forth preceding paragraphs

6   as though fully set forth herein.

7   98.   At the time of Decedent's death on October 10, 2016, Decedent was 23

8   years old with a life expectancy of more than fifty-three (53) years.

9   99.   Executor brings this action to recover any and all medical and funeral

10   expenses of the Decedent and any and all related expenses.

11   100.   Executor brings this action to recover damages from defendants

12   UNITED STATES OF AMERICA, and the UNITED STATES DEPARTMENT

13   OF THE NAVY, jointly and severally, for the unnecessary and exacerbated pain,

14   suffering, and mental anguish of Decedent caused by the failure to treat and

15   medical malpractice of   Defendants' employees, agents and contractors up to the

16   moment just prior to the time of Decedent's death on October 10, 2016.

17   101.   Executor brings this action under applicable California law to recover

18   the full value of the life of the Decedent from UNITED STATES OF AMERICA,

19   and the UNITED STATES DEPARTMENT OF THE NAVY, jointly and severally,

20   without any deduction for necessary or other personal expenses that would have

21   been incurred by the Decedent had she lived.

22

23

24

25

26

27

28   *Luckey v. United States -Verified Complaint*

*Aff. of Rima Laibow, M.D. (Ex. A)*                          32

1
2
3
4
IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CALIFORNIA
SAN JOSE DIVISION
5
6   DERRICK LUCKEY, Executor of
    the Estate of Danyelle A. Luckey,
    and
7   DERRICK LUCKEY and
    ANNETTE LUCKEY, parents of
8   Danyelle A. Luckey, deceased
9        Plaintiffs,
10       v.
11
    UNITED STATES DEPARTMENT
12  OF THE NAVY and
    UNITED STATES OF AMERICA,
13  jointly and severally,
14       Defendants.
15

)
)
)
)
)
)
)
)
)
)
)  CIVIL ACTION
)
)  FILE NUMBER _____
)
)
)
)
)
)
)
)

16   <u>**VERIFICATION  OF DERRICK  LUCKEY AND ANNETTE LUCKEY**</u>

17   COMES NOW, plaintiff **DERRICK LUCKEY,** Executor of the Estate of

18   Danyelle A. Luckey**, and DERRICK AND ANNETTE LUCKEY,** parents of

19   Danyelle A. Luckey**,** deceased**,** and,  after being duly  sworn, hereby declare,

20   pursuant to 28 U.S.C.§ 1746, under penalty of perjury that the statements of fact set

21   forth in the foregoing Verified Complaint are true and correct.

22       <u>**Dated**</u>:        October 3, 2018.

23
24       **DERRICK LUCKEY,** Executor of the
         Estate of Danyelle A. Luckey (date)
25
26       DERRICK LUCKEY, Father
         of Danyelle A. Luckey, Deceased
27
28

*Luckey v. United States -Verified Complaint*

*Aff. of Rima Laibow, M.D. (Ex. A)*                                    34

**PRAYER FOR RELIEF:**

WHEREFORE, DERRICK  LUCKEY, executor of the estate of Danyelle A. Luckey, and DERRICK LUCKEY and ANNETTE LUCKEY ("Plaintiffs"), parents of Danyelle A. Luckey, deceased, respectfully pray as follows:

(a)   that this action be tried by jury;

(b)   that Plaintiffs be awarded the relief prayed for in Count  I;

( c)   that Plaintiffs be awarded the relief prayed for in Count  II;

(d)   that Plaintiffs be awarded the relief prayed for in Count  III;

(d)   that DERRICK LUCKEY, in his capacity as Executor of the estate of Danyelle A. Luckey, deceased, be awarded the relief prayed for in Count IV;

(e)   pre-judgment interest  as allowed by law;

(f)   that all costs of this action be cast against defendants UNITED STATES OF AMERICA, and the UNITED STATES  DEPARTMENT OF THE NAVY, jointly and severally; and

(g)   for such other and further relief as the Court deems just  and proper.

**A JURY TRIAL IS DEMANDED**.

This the 3RD th day of October, 2018.

*Derrick Luckey*
**DERRICK LUCKEY,** Executor of the
Estate of Danyelle A. Luckey, *pro se* (date)

*Derrick Luckey*
DERRICK LUCKEY, Father
of Danyelle A. Luckey, Deceased, *pro se*

*Annette Luckey*
ANNETTE LUCKEY, Mother
of Danyelle A. Luckey, Deceased, *pro se*

*Luckey v. United States  -Verified Complaint*

*Aff. of Rima Laibow, M.D.  (Ex. A)*                                    33

*Annette Luckey 10/3/18*

ANNETTE  LUCKEY, Mother
of Danyelle A. Luckey, Deceased

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Luckey v. United States -Verified Complaint*

*Aff. of Rima Laibow, M.D. (Ex. A)*                          35